Don C. St. Peter, Esq.
Michael O'Brien, Esq.
Logan Nutzman, Esq.
ST. PETER LAW OFFICES, P.C.
2620 Radio Way • P.O. Box 17255
Missoula, MT 59808
Telephone: (406) 728-8282
Facsimile: (406) 728-8141
don@stplawoffices.com; mike@stplawoffices.com
logan@stplawoffices.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| TRAVEL GIG, LLC, a Montana limited liability company; and HAPPITRAVEL, LLC, a Montana limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>SHARING SERVICES GLOBAL CORPORATION, a Nevada corporation; SHRG IP HOLDING, LLC, a Texas limited liability company; GLOBAL TRAVEL DESTINATIONS, LLC, a Texas limited liability company; and JOHN DOES 1-25<br><br>Defendants. | Cause No. 9:22-CV-00146-DWM<br><br><br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiffs Travel Gig, LLC and HappiTravel, LLC by and through their attorney of record, St. Peter Law Offices, P.C., and respectfully complain and allege Defendants Sharing Services Global Corporation, SHRG IP Holdings, LLC, and Global Travel Destinations, LLC ("Defendants") as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Travel Gig, LLC ("Travel Gig") is a Montana limited liability company authorized to transact business in Montana and is owned by members Michael Darling and Camaron Corr.  Travel Gig is the owner of many registered and unregistered trademarks for the Happi Trademark brands, some of which having use dating back to at least as early as 2019.  Travel Gig has a number of pending trademark applications before the United States Patent and Trademark Office ("USPTO") and at present has been granted several registrations including HappiTrips (with design), HappiPass (word mark), and HappiPrice (word mark) and at least the following standard character word mark registrations are particularly pertinent here:

"**HappiTravel**" (USPTO Reg. No. 6627973) for use in membership club services in the nature of providing discounts to members in the field of travel

and

"**Be Happy.  Travel.**" (USPTO Reg. No. 6171337) for use in travel agency services, namely making reservations and bookings for transportation, travel agency services, namely making reservations and booking cruises, travel agency services, namely making reservations and bookings for transportation for vacations and trips, and travel booking agencies.

2.     Plaintiff HappiTravel, LLC ("Happi") is a Montana limited liability company authorized to transact business in Montana and is owned by members Michael Darling and Camaron Corr.  It operates its websites www.happitrips.com and www.happi.travel, which uses the mark "HappiTravel" and the slogan "Be Happy. Travel." throughout their branding and with authorization from Travel Gig, which held in common ownership with Happi.

3.     Happi and Travel Gig have common ownership and members Michael Darling and Camaron Corr share equal control over Happi and Travel Gig.

4.     Upon information and belief, Defendant Sharing Services Global Corporation ("SHRG") is a Nevada corporation.  SHRG is the parent company of SHRG IP Holdings, LLC.

5.     Upon information and belief, SHRG IP Holdings, LLC ("SHRG Holdings") is a Texas limited liability company.  SHRG Holdings applied to register a trademark for "Hapi Travel Destinations (and design)" (USPTO No. 90681135) based upon its intent to use that mark in relation to the following identified services: *travel and transport information services, travel booking agencies, travel clubs, travel guide and travel information services, travel information, arranging for travel visas and travel documents for persons traveling abroad, arranging of transportation for travel tours, arranging transport for travelers, booking of travel tickets, booking of seats for travel, booking of tickets for travel, organizing transport for travelers, providing*

*information, news, and commentary in the field of travel, providing links to web sites*

*of others featuring travel, and provision of travel information.* Upon information and

belief, SHRG Holdings is the listed owner of the website www.HapiTravel.com.

6.      Upon information and belief, Global Travel Destinations, LLC ("GTD")

is a Texas limited liability company.  GTD operates under Hapi Travel Destinations as

a trading name.

7.      This action arises from Defendants' repeated, willful, and egregious

misappropriation of the established and suggestive trademarks "HappiTravel" and "Be

Happy. Travel." both prior to and continuing after registration.  Despite being aware

of  Plaintiffs' exclusive trademark rights, Defendants nevertheless have repeatedly

infringed these rights by branding, marketing, selling, advertising travel discounts and

travel planning services through its website www.HapiTravel.com and by using the

slogan.  Upon information and belief, Defendants have further infringed these rights

by encouraging their "promoters" to flood the internet with terms and slogans that

infringe upon Plaintiffs' trademark rights.

8.      This action is based upon §§ 32, 34, 35, and 43 of the Lanham Act, *i.e.*

15 U.S.C. §§ 1114, 1116, 1117, and 1125 and the Federal Defend Trade Secrets Act

as well as the Mont. Code Ann. §§ 30-14-401, et. Seq. and common law and statutory

unfair competition (see, e.g., § 30-14-207).

9.     Count VII arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to the Defend Trade Secrets Act, 18 U.S.C. §1839 ("DTSA").  The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337.

10.     This Court has subject matter jurisdiction of this action pursuant to § 39 of the Lanham Act, *i.e.* 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. §§ 1331 (federal question), 1338(a) (any Act of Congress relating to patents or trademarks), and 1338(b) (any action asserting claim of unfair competition joined with a substantial and related claim under the trademark law) for claims arising out of violations of the aforementioned Sections of the Lanham Act and Federal Defend Trade Secrets Act.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for all other claims asserted in this First Amended Complaint because those claims are so closely related to the federal claims asserted herein as to form part of the same case and controversy.

11.     This Court has general personal jurisdiction over the Defendants by virtue of Defendants substantial or continuous and systematic contact with Montana, to-wit:  Defendants, including John Doe Defendants affiliated with the named Defendants, engage with "promoters," "affiliates," "sponsors," or commonly-known "downline distributors" who live and work in Montana.  Moreover, and upon information and belief, Defendants arrange for travel to and from Montana.  This

Court has specific personal jurisdiction over Defendants by virtue of Defendants actions, namely trademark infringement, resulting in the commission of a tort occurring in Montana.  This Court has further personal jurisdiction over the Defendants by virtue of the Defendants direct activities and availability to Montana, specifically ¶ 41.3 of its Customer & Affiliate Policies and Procedures, which policies and procedures are related to trademark protection, *see* ¶ 18.  Defendants have previously appeared in federal court to defend and then mediate a prior dispute later settled with a written agreement based upon which this Court entered a dismissal.

12.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND COMMON TO ALL COUNTS

13.     The Plaintiffs have built significant goodwill around the Happi family of trademarks (herein "the Happi Trademarks") and the Happi Trademarks serve as valuable and important source-identifiers of the services that originate as a result of business collaborations of the Plaintiffs.  Therefore, Plaintiffs own common law rights in the Happi Trademarks and they have built a family of marks centered around their distinctive designation and house mark, HAPPI.

14.     Plaintiffs own common law rights to HAPPITRIPS, HAPPITRAVEL, HAPPIPRICE, HAPPISCIENCE, HAPPIPASS, HAPPIHOTELS, HAPPICONDOS, HAPPICRUISES, TRAVEL GIG, along with the various logos and trade dress

associated therewith.  The Plaintiffs have applied to register many of these marks but all of them are important to the Happi brand and herein may collectively or individually be referenced as the Happi Trademarks.

15.    Travel Gig, LLC applied for registration of the mark HAPPITRAVEL on March 9, 2021, indicating a date of first use at least as early as August 1, 2019.  The registration covers use of the mark "HappiTravel" in standard characters, without claim to any particular font style, size, or color for use in association with the following services: "*membership club services in the nature of providing discounts to members in the field of travel*."  The Trademark registration was approved published for opposition and seeing none, the USPTO registration was issued on January 25, 2022 (USPTO Reg. No. 6627973).

16.    Travel Gig, LLC applied for registration of the mark "Be Happy. Travel." on January 24, 2020, indicating a bona fide intent to use the mark in commerce (15 U.S.C. 1051(b)).  The registration covers use of the mark "Be Happy. Travel." in standard characters, without claim to any particular font style, size, or color for use in association with the following services: "*Travel agency services, namely making reservations and bookings for transportation, travel agency services, namely making reservations and booking cruises, travel agency services, namely making reservations and bookings for transportation for vacations and trips, and travel booking agencies*." The Trademark registration was approved and published for opposition and seeing

none, the Trademark Office registration was issued on October 6, 2020 (USPTO Reg. No. 6171337).

17.   Defendants copied the pattern of house mark "HAPI", followed by a descriptive term to create a host of sub marks following the pattern, to wit: HAPI PLACES, HAPI TRAVEL CLUB, HAPI DESTINATIONS and HAPI SAVINGS, etc., and the commonality and confusion is exacerbated by the Defendants' adoption of public interfaces for their services that closely imitate the Plaintiffs' domain names, trade dress with whimsical fonts, themes, and similar color schemes.

18.   SHRG Holdings applied to register HAPI TRAVEL DESTINATIONS and design with the USPTO (Application Serial No. 90681135) on April 29, 2021 under 15 U.S.C. 1051(b).  In its application, SHRG Holdings described the service mark in the application as consisting of the letters HAPI with a stylized A, TRAVEL with a plane between the "A" and the "V" and DESTINATIONS below TRAVEL. The application identified the services that were to be offered under this mark as follows:  "*travel and transport information services, travel booking agencies, travel clubs, travel guide and travel information services, travel information, arranging for travel visas and travel documents for persons traveling abroad, arranging of transportation for travel tours, arranging transport for travelers, booking of travel tickets, booking of seats for travel, booking of tickets for air travel, organizing transport for travelers, providing information, news, and commentary in the field of*

*travel, providing links to web sites of others featuring travel, and provision of travel*

*information.*"

19.     The SHRG Holdings Application of USPTO Serial No. 90681135 for the

HAPI TRAVEL DESTINATIONS and design mark was refused. On September 23,

2021, the Trademark Office sent a Non-Final Office Action to SHRG Holdings

indicating the following issues:  (1) Prior Filed Applications, specifically including

the "HappiTravel" application held by Travel Gig (then, USPTO Serial No. 90567249

and now, Reg. No. 6627973); (2) Section 2(d) (15 U.S.C. Section 1052(d)) Refusal –

Likelihood of Confusion based upon a likelihood of confusion with the registration to

a third party; and (3) Disclaimer Required – meaning, even if the likelihood of

confusion refusals could be overcome, the Trademark Office required a disclaimer of

the words "Travel Destinations" apart from the mark as a whole.

20.     SHRG Holdings failed to timely respond to the Non-Final Office Action

by March 23, 2022, and a Notice of Abandonment was issued on April 12, 2022.

21.     On May 26, 2022, SHRG Holdings sought to revive its application,

argued that the HAPI TRAVEL DESTINATIONS and design mark was not likely to

cause confusion to the consuming public, and made the required disclaimer.  After

revival, the Trademark Office considered the Response. Upon further review, the

Trademark Office maintained and continued the Section 2(d) likelihood of confusion

refusal based upon the third-party registration.  The Trademark Office then suspended

further consideration until such time as the third-party, prior-filed application was either abandoned or granted, in the latter case, that registration could also serve as the basis for formal refusal.  The Trademark Office noted in the Suspension Notice that Travel Gig's "HappiTravel" Application No. 90567249 was now registered as Reg. No. 6627973 stating: "This registration will be addressed upon resolution of the [third-party] application above."  Because the Suspension Notice was issued on July 13, 2022, as a matter of course it will not be reevaluated again by the Trademark Office until January 2023.  Should the third-party application still be pending at that time, the Trademark Office is likely to issue another Suspension Notice for the HAPI TRAVEL DESTINATIONS and design mark application.

22.     In early April of 2022, representatives of Plaintiffs met with an individual, Jake Kevorkian, with whom they had had a previous professional relationship.  They discussed Travel Gig's plans and closely held secrets for launching an affiliate program by Plaintiffs to promote the HappiTravel brand and Plaintiffs' commercial products and services.

23.     Over the following two and half (2-1/2) months, representatives of Plaintiffs provided Mr. Kevorkian with voluminous confidential information related to the details of Travel Gig's affiliate program, affiliate rewards program, products and services.  The technology and platform used by Happi and Travel Gig was completely unique.

24.     Representatives of Plaintiffs shared the highly confidential information with Mr. Kevorkian for the purpose of working closely together in launching the affiliate program.  Mr. Kevorkian knew that Travel Gig and Happi were not discussing any of its confidential information with anyone who had not also signed a confidentiality agreement with the Plaintiffs and that Mr. Kevorkian was only receiving the information because he was in a position of trust after having agreed to keep the discussion secret.

25.     On June 22, 2022, Mr. Kevorkian notified representatives of the Plaintiffs that he decided to become a "promoter" of GTD and would be directly competing with the Plaintiffs' businesses and services.  At this point in time, Mr. Darling and Mr. Corr became aware Mr. Kevorkian was communicating with John ("JT") Thatch, his neighbor, who was and is Chief Executive Officer of SHRG Holdings and had long been in discussions to provide consulting services to GTD.

26.     Upon information and belief, Defendants consulted with Mr. Kevorkian to move its "multi-level marketing opportunity" from the prior nutrition company to offer travel services that closely mirror Happi's and Travel Gig's rewards plan and many of the critical and confidential innovations later brought to market by Plaintiffs.

27.     On June 1, 2022, Travel Gig officially launched its affiliate program. Defendants have softly launched a competing website using the confidential information obtained by GTD from Mr. Kevorkian.  According to

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL          PAGE 11**

www.HapiTravel.com, Defendants intend to host an official launch event in Dallas,
Texas, on November 11-12, 2022.

28.     Defendants have repeatedly used the phrases similar to and including "Be
Hapi, Travel" in their marketing and branding.

29.     Defendants' disregard of the HappiTravel brands and particularly the
registered and unregistered trademark rights held by the Plaintiffs is creating
significant confusion in the market.  Since Defendants' soft launch, the Plaintiffs have
received a consistent stream of customers and affiliates contacting Happi or Travel
Gig with questions and submitting "support tickets" over the confusion between the
brands.  Defendants' actions have disrupted the Plaintiffs' sales and created confusion
among consumers that the Plaintiffs also operate a multi-level marking company.
This is not the case.  Defendants' "promoters" have contacted Plaintiffs' affiliates to
expressly encourage the affiliates to quit promoting HappiTravel and instead become
a "promoter" for www.HapiTravel.com.

30.     Since the soft launch, GTD has publicly promoted celebrating an
"explosion" in new enrollments to the Defendants' companies.  Defendants have
specifically posted videos in which they reference a massive increase in enrollments
and revenue to their companies as a result of the program it enhanced after gaining
access to the confidential information provided to GTD.

## COUNT I
## Trademark Infringement of the Registered Mark – "HappiTravel"
## 15 U.S.C. § 1114

31.     Plaintiffs incorporate the allegations of Paragraphs 1 through 30 as if fully reproduced here.

32.     Section 32(1)(a) of the Lanham Act, *i.e.* 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce without the consent of the registrant, any registered trademark or any reproduction, counterfeit, copy, or colorable imitation thereof in connection with marketing, advertising, distribution, or sale of goods or services which is likely to result in confusion, mistake, or deception.

33.     The trademark "HappyTravel" is a federally registered mark. Plaintiffs hold valid, protectable trademark rights in the mark.

34.     Defendants have used in connection with its products and services spurious designations that are identical with, or substantially indistinguishable from, HappiTravel for which Travel Gig holds federal trademark registrations.  Defendants have used these spurious designations in commerce in connection with the advertising, sale, offering for sale, and/or distribution with their products and services for their own financial gain.  Travel Gig has not authorized Defendants' use of its Trademarks.

35.     At all relevant times, Defendants had actual, direct, and constructive knowledge of Plaintiffs' prior use and Travel Gig's ownership in "HappiTravel" and related trademarks.  Defendants' conduct is thereby willful and reflects Defendants'

intent to exploit the goodwill and strong brand recognition associated with the Happi Trademarks.

36.     Defendants' acts as described in the Complaint constitute trademark infringement in violation of § 32 of the Lanham Act, *i.e.* 15 U.S.C. § 1114.

37.     Defendants' acts have caused, and will continue to cause, irreparable injury to the Plaintiffs.  The Plaintiffs have no adequate remedy at law and is thus damaged in an amount not yet determined.

## COUNT II
### Trademark Infringement of Registered Mark – "Be Happy. Travel."
### 15 U.S.C. § 1114

38.     Plaintiffs incorporate the allegations of Paragraphs 1 through 37 as if fully reproduced here.

39.     Section 32(1)(a) of the Lanham Act, *i.e.* 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce without the consent of the registrant, any registered trademark or any reproduction, counterfeit, copy, or colorable imitation thereof in connection with marketing, advertising, distribution, or sale of goods or services which is likely to result in confusion, mistake, or deception.

40.     The trademark slogan "Be Happy. Travel." is a federally registered mark. Plaintiffs hold valid, protectable trademark rights in the mark.

41.     Defendants have used in commerce confusingly similar marks including "Travel. Be Hapi." and similar slogans intending those phrases to serve as trademarks

in connection with its products and services without Plaintiffs' consent or authorization. Defendants' use is likely causing and will continue to cause confusion and mistake in the mind of the public, leading the public to believe that Defendants' products and services emanate or originate from Plaintiffs, or that Plaintiffs have approved, sponsored, or otherwise associated itself with Defendants or their products and services.

42.     Through the unauthorized use of the registered trademark "Be Happy. Travel." Defendants are unfairly benefiting from and misappropriating the Plaintiffs' goodwill and reputation. This has resulted in substantial and irreparable injury to the public and to Plaintiffs.

43.     At all relevant times, Defendants had actual, direct, and constructive knowledge of Plaintiffs' prior use and ownership of the slogan "Be Happy. Travel." Defendants' conduct is thereby willful and reflects Defendants' intent to exploit the goodwill and brand reputation associated with the slogan "Be Happy. Travel." and other Happi Trademarks.

44.     Defendants' acts constitute trademark infringement in violation of § 32 of the Lanham Act, *i.e.* 15 U.S.C. § 1114.

45.     Defendants' acts have caused, and will continue to cause, irreparable injury to the Plaintiffs. The Plaintiffs have no adequate remedy at law and are thus damaged in an amount not yet determined.

## COUNT III
### Trademark Infringement of Unregistered Marks
### 15 U.S.C. § 1125 and Montana Common Law

46.     Plaintiffs incorporate the allegations of Paragraphs 1 through 45 as if fully reproduced here.

47.     Plaintiffs hold valid, protectable trademark rights in the Happi Trademarks.

48.     Defendants have attempted to copy the Happi Trademarks, including but not limited to copying the house mark followed by sub mark pattern, trade dress, and color schemes and thereby infringe Plaintiffs' common law rights under Section 43(a) of the Lanham Act and Montana common law by infringing these marks through their use of such designations as HAPI TRAVEL DESTINATIONS, HAPI PLACES, HAPI TRAVEL CLUB, HAPI DESTINATIONS, and HAPI SAVINGS, etc.

49.     Defendants' unauthorized use in commerce of spurious copies of the Happi Trademarks in connection with the distribution, advertising, promotion, offering for sale, and/or sale of goods and services in violation of Plaintiffs' trademark rights constitutes use of a symbol or device that is likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendants with Plaintiffs and as to the origin, sponsorship, association, or approval of Defendants' infringing goods and services in violation of § 43 of the Lanham Act, *i.e.* 15 U.S.C. § 1125.

50.     Defendants' actions as alleged herein, including but not limited to their unauthorized use in commerce of spurious copies of the HappiTravel branding and the common law interests Plaintiffs hold in the Happi Trademarks, for example, "HappiTravel" and "Be Happy. Travel", constitutes use of false designation of origin and misleading description and representation of fact that is likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendants with Plaintiffs and as to the origin, sponsorship, association, or other approval of Defendants' infringing goods and services in violation of the common law and § 43 of the Lanham Act, *i.e.* 15 U.S.C. § 1125.

51.     The Happi Trademarks are inherently distinctive because the marks are fanciful, arbitrary, or at least suggestive in relation to the services provided thereunder for travel service.  Plaintiffs were the first to use the Happi Trademarks in the direct sales travel market.

52.     Defendants commenced use of marks confusingly similar to the Happi Trademarks in the same market and service, namely in the direct sales travel market after Plaintiffs established trademark rights in the Happi Trademarks.

53.     Defendants' misuse of the Happi Trademarks as used within the direct sales travel market creates an overall impression to customers that is similar in appearance, sound, and meaning.

54.     Defendants have created actual confusion, to-wit scores of affiliates and customers have reported to Plaintiffs that they are confused about the divergent marks.

55.     At all relevant times, Defendants had actual, direct, and constructive knowledge of Plaintiffs' prior use and ownership of the Happi Trademarks. Defendants' conduct is therefore willful and reflects Defendants' intent to exploit the goodwill and brand recognition associated with the Happi Trademarks.

56.     Defendants "knew or should have known" about the Happi Trademarks on or around April 21, 2021, when they applied to register many of these marks. In the ordinary course of that filing, Defendants' legal counsel should have conducted a search on potentially similar marks and should have reported those results back to the Defendants prior to filing an application with the USPTO.

57.     Defendants have had actual knowledge, since at least 2021, that Plaintiffs were using the Happi Trademarks, yet they began misuse of the Happi Trademarks thereafter.

58.     Plaintiffs' and Defendants' goods and services are sold in the same or similar outlets, namely the direct sales travel market.

59.     The consumers of Plaintiffs' and Defendants' goods and services are not sophisticated or discriminating and are therefore, more easily confused by the use and misuse of the Happi Trademarks.

60.     Plaintiffs and Defendants operate in the same market, namely the direct sales travel market.

61.     Defendants' wrongful acts will continue unless enjoined by this Court.

62.     Defendants' acts have caused, and will continue to cause, irreparable injury to the Plaintiffs.  The Plaintiffs have no adequate remedy at law and thus are damaged in an amount not yet determined.

**COUNT V**
**Likelihood of Confusion**

63.     Plaintiffs incorporate the allegations of Paragraphs 1 through 62 as if fully reproduced here.

64.     Defendants are creating a likelihood of confusion among consumers as to the source of their goods or services by using a trademark that is creating a likelihood of confusion with The Happi Trademarks which, Plaintiffs own and which are valid and protectable trademarks.

65.     The Happi Trademarks are inherently distinctive because the marks are fanciful, arbitrary, or at least suggestive in relation to the services provided thereunder for travel service.  Plaintiffs were the first to use the Happi Trademarks in the direct sales travel market.

66.     Defendants commenced use of marks confusingly similar to the Happi Trademarks in the same market and service industry, namely in the direct sales travel

market after Plaintiffs established trademark rights in the Happi Trademarks.

67.    Defendants' misuse of the Happi Trademarks as used within the direct sales travel market creates an overall impression to customers that is similar in appearance, sound, and meaning.

68.    Defendants have created actual confusion, to-wit scores of affiliates and customers have reported to Plaintiffs that they are confused about the source of the services associated with respective marks.

69.    Defendants "knew or should have known" about the Happi Trademarks on or around April 21, 2021, when they applied to register many of these marks. In the ordinary course of that filing, Defendants' legal counsel should have conducted a search on potentially similar marks and should have reported those results back to the Defendants prior to filing an application with the USPTO.

70.    Defendants have had actual knowledge, since at least 2021, that Plaintiffs were using the Happi Trademarks, yet they began misuse of the Happi Trademarks thereafter.

71.    Plaintiffs' and Defendants' goods and services are sold in the same or similar outlets, namely the direct sales travel market.

72.    The consumers of Plaintiffs' and Defendants' goods and services are not sophisticated or discriminating and are therefore more easily confused by the use and misuse of the Happi Trademarks.

73.     Plaintiffs and Defendants operate in the same market, namely the direct

sales travel market.

## COUNT VI
## Violation of the Montana Uniform Trade Secrets Act

74.     Plaintiffs incorporate the allegations of Paragraphs 1 through 73 as if

fully reproduced here

75.     Defendants prematurely gained access to and obtained pre-release,

confidential trade secret information covered by an executed confidentiality

agreement, such information including, but not limited to, information not generally

known to the public that related to Travel Gig's affiliate compensation model,

business, methods of doing business, technology, software, clients, customers,

vendors, affiliates, finances, plans, proposals, and practices.

76.     Prior to the release of the Plaintiffs' affiliate reward program, these

materials and the information derived independent economic value, actual and

potential, from not being generally known to, and not being readily ascertainable by

proper means, by other persons who can obtain economic value from their disclosure

or use and were the subject of reasonable efforts under the circumstances to maintain

their secrecy.

77.     As a result of Defendants' premature access to these confidential

business materials and information, Defendants specifically acquired Plaintiffs' trade

secrets, which included, but were not limited to, Plaintiffs' affiliate compensation model, business plans, methods, software, and techniques of selling to and representing customers and affiliates, information regarding actual customers and affiliates, information concerning Plaintiffs' methods for marketing, advertising, servicing, and pricing.

78.     Upon information and belief, Defendants have used, and are using, Plaintiffs' confidential trade secrets.  The Defendants have used these confidential trade secrets to further their position and for their advantage and Plaintiffs' disadvantage.

79.     Defendants are using Plaintiffs' confidential trade secrets in conjunction with their HapiTravel website to wrongfully and illegally compete against Happi.

80.     Defendants have in their possession or control Plaintiffs' confidential affiliate information, proprietary information, trade secrets, and/or lists of financial information, affiliate lists, and other confidential information.

81.     At all times relevant to this count, Plaintiffs have at all times kept secret and confidential its trade secrets and confidential or proprietary business information and has made only limited and confidential disclosures of this information on a need-to-know basis and under strict coverage of non-disclosure and confidentiality agreements.

82.     Defendants have, in violation of the Montana Uniform Trade Secret Act, misappropriated, converted, and/or disclosed Plaintiffs' trade secretes by:

      a.     Willfully and maliciously misappropriating and obtaining possession of confidential information and other trade secrets by improper means, with the intent to convert that information to their use; and

      b.     Without Plaintiffs' consent, using such information for the Defendants' benefit and gain; and, (i) after having obtained such trade secrets by improper means; and (ii) at a time when Defendants knew or had reason to know that knowledge of such trade secrets was acquired under circumstances giving rise to a duty to the Defendants to maintain secrecy.

*See* Mont. Code Ann. § 30-14-401, *et. seq.*

83.     The Defendants' actions and conduct have damaged Plaintiffs, causing irreparable harm.

## COUNT VII
## Violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1839

84.     Plaintiffs incorporate the allegations of Paragraphs 1 through 83 as if fully reproduced here.

85.     Defendants have violated the Defend Trade Secrets Act (18 U.S.C. §§ 1836, 1839) ("DTSA") when it utilized information unlawfully obtained from Happi's business.

86.     The DTSA, 18 U.S.C. § 1839(3) defines a trade secret as:

      all forms and types of financial, business, scientific, technical, economic, or engineering information,

including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

> (A)  the owner thereof has taken reasonable measures to keep such information secret; and

> (B)  the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).

87.    After signing a confidentiality agreement, in April 2022, Jake Kevorkian obtained access to confidential business information contained within Plaintiffs' secure system which qualified as a trade secret because, inter alia, it included pre-launch business information in the form of the affiliate compensation model, business, methods of doing business, technology, software, clients, customers, vendors, affiliates, finances, plans, proposals, and practices and confidential aspects of the rewards program details prior to their release to the public which derived their economic value as they were not generally known or ascertainable by another person not authorized by Plaintiffs to access the information.

88.     By virtue of actions taken in alliance with John Does 1- 25, Defendants obtained access to and obtained confidential trade secret information by improper means, such information including, but not limited to, information not generally known to the public that relates to Plaintiffs' affiliate compensation model, business, methods of doing business, technology, software, clients, customers, vendors, affiliates, finances, plans, proposals, and practices.

89.     In the times pertinent to this allegation, Plaintiffs had at all times kept secret and confidential its trade secrets and confidential or proprietary business information and had made only limited and confidential disclosures of this information on a need-to-know basis.  Plaintiffs had taken measures to ensure the confidentiality of the information in its system by, among other things, limiting access to the systems to individuals who work closely with Mr. Darling and Mr. Corr and by allowing only those authorized users to utilize the information for Plaintiffs' legitimate business purposes, such as to prepare for the formal launch occurring in the Summer of 2022.

90.     These materials and the information derived independent economic value, actual and potential during pre-release, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from their disclosure or use and were the subject of reasonable efforts under the circumstances to maintain their secrecy.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL          PAGE 25**

91.     Defendants obtained Plaintiffs' trade secrets by improper means thereby misappropriating Plaintiffs' trade secrets by utilizing Plaintiffs' prelaunch business information and Plaintiffs' affiliate compensation model, business, methods of doing business, technology, software, clients, customers, vendors, affiliates, finances, plans, proposals, and practices.

92.     The Defendants' actions and conduct violate the DTSA and has damaged Plaintiffs, causing irreparable harm.

## COUNT VIII
## Punitive Damages Under Mont. Code Ann. § 27-1-221

93.     Plaintiffs incorporate the allegations of Paragraphs 1 through 92 as if fully reproduced here.

94.     Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to Plaintiffs.

95.     Defendants deliberately proceeded to act with indifference to the high probability of injury to Plaintiffs.

96.     Defendants' actions were undertaken with actual malice.

97.     To set an example and punish Defendants for their wrongful conduct, Plaintiffs seek punitive damages pursuant to Mont. Code Ann. § 27-1-221.

## COUNT IX
## Common Law Unfair Competition and Trademark Infringement

98.     Plaintiffs incorporates the allegations of Paragraphs 1 through 97 as if

fully reproduced here.

99.    Defendants' activities as stated herein constitute unfair competition and an infringement of Plaintiffs' common law trademark rights in the Happi Trademarks within the State of Montana and in violation of Montana law.

100.   Upon information and belief, Defendants' wrongful and infringing activities have caused irreparable injury and other damage to Plaintiffs' business, reputation, and good will in the Happi Trademarks. Plaintiffs have no adequate remedy at law.

**COUNT X**
**Unfair Trade Practices Act**

101.   Plaintiffs incorporate the allegations of Paragraphs 1 through 100 as if fully reproduced here.

102.   Defendants' activities alleged herein constitute unfair and deceptive acts and practices in the conduct of its trade and business in violation of Mont. Code Ann. § 30-14-207.

103.   Upon information and believe, Defendants' wrongful and deceptive activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to Plaintiffs' business, reputation, and good will in the Happi Trademarks. Plaintiffs have no adequate remedy at law.

//

## COUNT X
## Tortious Interference With a Prospective Economic Gain

104.    Plaintiffs incorporate the allegations of Paragraphs 1 through 103 as if fully reproduced here.

105.    Defendants intentionally and willfully engaged in a course of conduct to seek redress after a settlement in their prior lawsuit did not satisfy the Defendants.

106.    Defendants undertook affirmative and illicit steps to learn details about the Plaintiffs' business plans prior to their being generally known to the public.

107.    Defendants modified their prior business models, which were generally providing multi-level marketing opportunities in nutrition-based products to enter the travel industry where they had never before conducted business.

108.    Defendants went to great pains to copy Plaintiffs' basic ideas and marketing, and to open a competing business modeling its own reward program after the Plaintiffs' reward program platform using the confidential information Defendants obtained with designs and objectives of harming Plaintiffs and their members.

109.    Defendants infringed upon Plaintiffs' Trademarks.

110.    Defendants acted in a manner calculated to cause damage to the Plaintiffs and Plaintiffs' business.

111.    Defendants' acts were unlawfully done for the purpose of causing damage to the Plaintiffs and their members without right or justification.

112.   Plaintiffs have suffered damage as a result of Defendants action.

WHEREFORE Plaintiffs pray for the following:

1.      For favorable judgment on all claims alleged herein;

2.      For preliminary and permanent injunctive relief as allowed by law;

3.      For actual, special and general damages to be determined at trial;

4.      For an accounting and a disgorgement of all profits wrongfully made by
Defendants through their wrongful conduct;

6.      For an award of punitive damages;

7.      For attorney's fees and costs as allowed by law; and

8.      Any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all issues as triable in the above action.

DATED this 4th day of November, 2022.


_____/s/_____   Michael O'Brien_____
Attorneys for Plaintiffs