IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| TRAVEL GIG, LLC and HAPPITRAVEL, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> SHARING SERVICES GLOBAL CORPORATION, SHRG IP HOLDINGS, LLC, GLOBAL TRAVEL DESTINATIONS, LLC, and JOHN DOES 1–15, <br><br> Defendants. | CV 22–146–M–DWM <br><br><br> OPINION <br> and ORDER |

Plaintiffs Travel Gig, LLC ("Travel Gig") and HappiTravel, LLC

("HappiTravel") (collectively "Plaintiffs") sued Defendants Sharing Services

Global Corporation ("Sharing Services"), SHRG IP Holdings, LLC,[1] and Global

Travel Destinations, LLC (collectively "Defendants") seeking injunctive relief,

---

[1] The caption incorrectly lists this party as "SHRG IP HOLDING, LLC"—the correct entity name is "SHRG IP HOLDINGS, LLC." The caption will be updated to reflect this correction.

damages, and disgorgement based on Defendants' alleged infringement of Plaintiffs' trademarks. *See* 15 U.S.C. § 1114.

On October 5, 2022, Plaintiffs moved for a preliminary injunction to enjoin Defendants from using the words and phrases: (1) "Happi Travel," "Hapi Travel," "Happy Travel," or "Hapy Travel," and (2) "Be Happy. Travel." Or "Travel. Be Happy." (Doc. 10 at 3.) A hearing was held on December 2, 2022. (*See* Doc. 40.) Michael O'Brien and Sarah Rhoades appeared for Plaintiffs; Blake Dietrich and Stephen Bell appeared for Defendants. Plaintiffs called three witnesses: Michael Darling (Plaintiffs' Chief Technology Officer and principal), Camaron Corr (Plaintiffs' other principle), and Dr. Jakki Mohr (Regents Professor of Marketing at the University of Montana). Defendants did not call any witnesses. After the hearing, the Court indicated that it was likely to issue an injunction but required further input on its scope. (Doc. 41.) The parties were therefore directed to file proposed language outlining their suggested scope for injunctive relief. (*Id.*)

After that order was issued but prior to any final decision on Plaintiffs' motion, Defendants filed a Motion for Leave to File a Motion for Reconsideration under District of Montana Local Rule 7.3(a). (Doc. 48.) Because there was no

interlocutory order to reconsider as of December 5, 2022, when Defendants filed their motion, their request is denied as premature.[2]

Ultimately, for the reasons outlined below, Plaintiffs' motion for preliminary injunctive relief, (Doc. 10), is granted in part and denied in part.

**BACKGROUND**

I.     **The Trademarks and Businesses**

Plaintiff HappiTravel sells discount travel services online.  They market their business primarily through their "affiliate" program.  Affiliates are independent contractors employed by Travel Gig who refer potential customers to HappiTravel and receive a kickback if those potential customers purchase services.  Darling described this marketing model as an innovative take on the direct sales model.  Importantly, Darling was adamant that Plaintiffs' direct sales marketing model is not a form of multi-level marketing, but when pressed by Defendants' counsel, he was not entirely able to explain the difference between the two.  Plaintiffs own two relevant registered trademarks: (1) "BE HAPPY. TRAVEL." (Reg. No. 6,171,337) in International Class 39 (travel agency services), (Doc. 40-2

---

[2] Defendants' motion would also be denied on the merits.  A motion for leave must demonstrate either that: (1) the facts and law are materially different from those before the Court before entry of the order *and* "the party applying for reconsideration did not know such facts or law before entry of the order" *or* (2) "new material facts arose or a change of the law occurred after the entry of the order."  L.R. 7.3(b).  Defendants have not demonstrated either.

at 1), and (2) "HAPPITRAVEL" (Reg. No. 6,627,973) in International Class 35 (travel membership club services), (Doc, 40-3 at 1).  Both trademarks note that "the mark consists of standard characters without claim to any particular font style, size or color."  (Docs. 40-2, 40-3.)

Hapi Travel Destinations also sells discount travel services online.  As a subsidiary brand of Defendant Sharing Services, they market their business primarily through a multi-level marketing structure, which, while distinct from Plaintiffs' marketing structure in name, appears substantially similar in practice. Sharing Services, through its various subsidiaries, have been selling "health products" including nootropic supplements and foods for around 10 years. Defendants own many trademarks relating to those business activities.  Many of these trademarks include the word "HAPI" or "HAPPY"—they have been using this theme to sell these health products and services since around 2016.  In March 2021, Defendant Sharing Services Global Corporation announced the launch of Hapi Travel Destinations, (Doc. 26-3 at 1), and filed a trademark application with the United States Patent and Trademark Office for "HAPI TRAVEL DESTINATIONS" (Serial No. 90681135) on April 29, 2021, (Doc. 26-7 at 1). Notably, that trademark registration application was denied by the United States Patent and Trademark Office on September 23, 2021 because it was confusingly

similar to the trademark "HAPPY TRAVELS," held by an unrelated entity with the same name doing business in New Hampshire. (Doc. 40-14 at 4.)

The parties, albeit under different names, have had extensive prior dealings. Although the parties now present slightly different accounts of this history, what seems clear is that Darling and his business partner Camaron Corr worked with Defendants on a business venture that soured. (*See* Doc. 26 at 14.) At the end of their business dealings, litigation and settlement ensued. As a result, Defendants paid Darling and Corr $425,000 and returned their ownership stake in Darling's and Corr's business, in exchange for the return of 5,628,750 shares of SHRG stock. (Doc. 12-1 at 2–3.)

## II.   This Case

On September 7, 2022, Plaintiffs filed their original complaint, alleging six causes of action arising out of Defendants' misuse of Plaintiffs' two registered trademarks, "HAPPITRAVEL" and "BE HAPPY. TRAVEL." (*See* Doc. 1.)

On November 4, 2022, Plaintiffs filed their First Amended Complaint, now alleging the following ten[3] causes of action: Count I, trademark infringement under 15 U.S.C. § 1114 of "HAPPITRAVEL" mark; Count II, trademark infringement under 15 U.S.C. § 1114 of "BE HAPPY. TRAVEL." mark; Count III, trademark infringement under 15 U.S.C. § 1125 and Montana Common Law of unregistered

---

[3] Plaintiffs include two counts labelled "Count X" and skip "Count IV."

marks; Count V, likelihood of confusion; Count VI, violation of the Montana

Uniform Trade Secrets Act; Count VII, violation of the Defend Trade Secrets Act,

18 U.S.C. § 1836, 1839; Count VIII, punitive damages under Mont. Code Ann.

§ 27–1–221; Count IX, Common Law Unfair Competition and Trademark

Infringement; Count X, Unfair Trade Practices Act; and Count X[I], Tortious

Interference with Prospective Economic Gain. (Doc. 27.)

ANALYSIS

According to Plaintiffs, they are entitled to injunctive relief because

Defendants are infringing on the use of their valid trademarks. Defendants counter

that they have actually been using the marks for longer and are not doing any such

infringement. Plaintiffs have the better argument at this stage.

## I.   Preliminary Injunction

"To obtain a preliminary injunction, [the plaintiff] 'must establish that [it] is

likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the

absence of preliminary relief, that the balance of equities tips in [its] favor, and that

an injunction is in the public interest.'" *Herb Reed Enters., LLC v. Florida Ent.*

*Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting *Winter v. Nat.*

*Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (alterations in original). "As

in all occasions in which a court issues a preliminary injunction, Federal Rule of

Civil Procedure 65(d) requires that the court make the injunction 'specific in terms

. . . describ[ing] in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained.'" *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1027 (N.D. Cal. 2003) (quoting Fed. R. Civ. P. 65(d)) (alterations in original).  Because Plaintiffs have established each *Winter* factor, they are entitled to a preliminary injunction.

## A. Likelihood of Success

The basis for Plaintiffs' argument is that Defendants' mark, "HAPI TRAVEL DESTINATIONS" is confusingly similar to Plaintiffs' mark "HAPPITRAVEL."  To prove likelihood of success, Plaintiffs must demonstrate that they are "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Herb Reed Enters., LLC*, 736 F.3d at 1247 (internal quotation marks omitted).  Plaintiffs have done so.

### 1. Valid Protectable Mark

Plaintiffs have two valid, protectable marks, "HAPPITRAVEL" and "BE HAPPY. TRAVEL."  A mark registered on the principal register by the United States Patent and Trademark Office is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b); *see Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108,

1113–14 (9th Cir. 2010). "If the plaintiff establishes that a mark has been properly registered, the burden shifts to the defendant to show by a preponderance of the evidence that the mark is not protectable." *Zobmondo Ent., LLC*, 602 F.3d at 1114.

Plaintiffs produced United States Patent and Trademark Office registration certificates for the "HAPPITRAVEL" and "BE HAPPY. TRAVEL" trademarks. While Defendants argue that they are the senior users of these marks and plan to prove this timeline, (Doc. 26 at 22), they have not yet done so. The proximity of Plaintiffs' application of "HAPPITRAVEL" on March 9, 2021, (Doc. 40-3 at 1), to Defendants announcement of the future launch of their business "HAPI TRAVEL DESTINATIONS" on March 2, 2021 is curious, but it does not prove Defendants' senior ownership of the mark, (Doc. 26-3 at 1).

Because Plaintiffs have registered, valid trademarks, and Defendants have not yet met their burden of showing that these marks are not protectable, Plaintiffs have demonstrated their ownership of "HAPPITRAVEL" and "BE HAPPY. TRAVEL." at this stage.

### 2. Confusingly Similar Mark

As a preliminary matter, it is necessary to clarify the effect of the grant of Defendants' Motion to Strike Plaintiffs' Reply Brief. (*See* Doc. 29.) At the injunction hearing, the Court instructed that Defendants' *Sleekcraft* argument in their reply brief was stricken and expressed hesitancy to accept testimony

8

regarding the *Sleekcraft* eight-factor test.  *See AMF Inc. v. Sleekcraft Boats*, 599

F.2d 341 (9th Cir. 1979) *abrogated in part on other grounds as recognized in*

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).  During the

hearing, Plaintiffs' presented evidence regarding the likelihood of consumer

confusion of the marks in a way that fits into the *Sleekcraft* test.  Defendants

objected that Plaintiffs' testimony at the hearing should be excluded as untimely

and because it violated the Court's ruling on the motion to strike.  However,

Plaintiffs were not under any obligation from any court order or rule requiring

disclosure of witnesses in anticipation of a preliminary injunction hearing.

Defendants had notice of the hearing, had ample time to prepare, were able to

cross-examine Plaintiffs' witnesses, and could have called their own witnesses to

demonstrate a lack of consumer confusion and/or to show why the *Sleekcraft*

factors weigh in their favor.  They did not do so.  Accordingly, after hearing the

evidence—and because *Sleekcraft* is the governing standard here that the Court

cannot ignore—the evidence presented at the December 2 hearing will be

considered in determining the outcome of this motion.

　　　　As alluded to above, the Ninth Circuit considers the following eight non-

exhaustive factors set forth in *Sleekcraft* to determine whether a "likelihood of

confusion" exists:

　　　　1. strength of the mark;
　　　　2. proximity of the goods;

9

3. similarity of the marks;

4. evidence of actual confusion;

5. marketing channels used;

6. type of goods and the degree of care likely to be exercised by the purchaser;

7. defendant's intent in selecting the mark; and

8. likelihood of expansion of the product lines.

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009) (internal quotation marks omitted) (citing *Sleekcraft*, 599 F.2d at 348–49). Nonetheless, the *Sleekcraft* test "is not like counting beans" and the relative importance of each factor is case-specific. *Id.*

### a. Strength of the Mark

When a mark is relatively strong in the marketplace, it is "more likely . . . to be remembered and associated in the public mind with the mark's owner." *La Quinta Worldwide LLC v. Quinta Real*, 762 F.3d 867, 874 (9th Cir. 2014) (internal quotation marks omitted). The relative strength of a mark is determined based on two factors: (1) its conceptual strength, depending on its relative distinctiveness from the least distinctive (generic) to the most distinctive (fanciful), *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 11999, 1208 (9th Cir. 2000), and (2) "the strength of the mark within the marketplace," *La Quinta Worldwide, LLC*, 762 F.3d at 874–75. "[I]n situations in which the appearance of the conflicting marks and the services provided are almost identical, the strength of the mark is of

10

diminished importance in the likelihood of confusion analysis." *GoTo.com, Inc.*, 202 F.3d at 1208 (internal quotation marks omitted).

Through the testimony of Jakki Mohr, Plaintiffs demonstrated that the "HAPPITRAVEL" mark is distinctive. Mohr testified that the trademark's spelling, the fonts used online, and the yellow color used, among other considerations, make the trademark distinctive. Plaintiffs did not demonstrate the *level* of distinctiveness but, they did demonstrate distinctiveness sufficient to weight this factor at least slightly in their favor. Defendants did not present evidence to demonstrate that Plaintiffs' mark is not distinctive. Neither party presented evidence on the strength of Plaintiffs' mark in the marketplace so that factor cannot be weighed. Notwithstanding the competing arguments on mark strength, because the marks' appearances and the services provided are so similar, while this factor weighs slightly in Plaintiffs' favor, it is of "diminished importance" in this analysis. *See GoTo.com, Inc.*, 202 F.3d at 1208.

### b. Proximity of the Goods and Services Offered

"Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield Commc'ns, Inc. v. West Coast Ent. Grp.*, 174 F.3d 1036, 1055 (9th Cir. 1999). Proximity of goods are measured by the extent to which goods and services are complementary, similar, and sold to the same type of purchasers. *La Quinta Worldwide LLC*, 762 F.3d at 875. The

goods do not need be identical, but rather related such that the public could encounter both marks and make a mistaken association of which company they are encountering. *See Sleekcraft*, 599 F.3d at 350.

Based on the evidence presented at this stage, the services provided by Plaintiffs' HappiTravel company and Defendants' Hapi Travel Destinations company are similar. The businesses are virtually the same—they both sell discount travel services online. The businesses also seem to sell to the same type of customer—those who want to travel and are interested in buying discount services to do so. Because the parties' online travel companies are proximately located, this factor weighs in Plaintiffs' favor.

### c. Similarity of the Marks

To determine the similarity of the marks, courts consider their "sight, sound, and meaning" as they appear in the marketplace. *La Quinta Worldwide LLC*, 762 F.3d at 875. When two services are similar, the amount of similarity required to support a likelihood of confusion is smaller. *Id.* at 876.

Like in *Sleekcraft*, where the two marks at issue—Sleekcraft and Slickcraft—were "the same except for two inconspicuous letters," *Sleekcraft*, 599 F.2d at 351, the distinction between the two marks here is merely an additional "p" in Defendants' moniker. The marks are also pronounced the same way. Moreover, as Mohr testified, the way the trademark appears in the online

12

marketplace is also similar.  For example, they both use a similar color scheme and a similar "brand" presentation.  The marks were so confusing, in fact, that the Court had to create a naming system at the preliminary injunction hearing—Plaintiffs' mark was referred to as "Plaintiff Happi" and Defendants' mark was referred to as "Defendant Hapi."  Accordingly, this factor weighs in Plaintiffs' favor.

### d. Evidence of Actual Confusion

In *Sleekcraft*, the court acknowledged that while it can be difficult to determine evidence of actual confusion, if past confusion has been determined then the likelihood of future confusion can be presumed.  599 F.2d at 352.  Here, Plaintiffs insist that they "ha[ve] received feedback from scores of Affiliates and customers about having confusion between Plaintiffs and Defendants respective business," (Doc. 11 at 3), and that "scores of affiliates have acknowledged confusion between the brands," (*id.* at 7).  At the hearing, Darling testified that he has experienced many instances where people have contacted his company—HappiTravel—with questions and concerns about Defendant Hapi Travel Destinations' business.  Mohr also testified that when searching for the companies online it is easy to confuse the two because of the ways in which online search engines generate results.  Notably though, Plaintiffs were only able to produce evidence of a few actual instances of consumer confusion.  But Defendants did not

present any evidence that such confusion did not occur.  Additionally, because both companies are new, it is conceivable that there is little evidence of actual confusion and that future confusion between these two brands is likely.  Therefore, this factor weighs in Plaintiffs' favor.

### e.  Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353.  Plaintiffs call their marketing strategy a direct sales model using an "affiliate" program and Defendants say they use a multi-level marketing strategy.  While the labels may be different, they operate in much the same way—by empowering people to sell their product directly and then making referrals to the main service.  Importantly, they both sell their services exclusively online.  According to Plaintiffs' counsel, they even attended the same convention in November 2021 to market their services.  While the parties may turn out to have drastic differences in marketing strategies, at this stage it appears they market in much the same way.  Accordingly, this factor also weighs in Plaintiffs' favor.

### f.  Type of Goods and Degree of Care Likely To Be Exercised by the Purchaser

This factor requires a court to consider how "the typical buyer exercising ordinary caution" would likely consider the two competing options.  *Sleekcraft*, 599 F.2d 353.  Again, apart from Plaintiffs' assertions that their customers cannot

14

tell the difference between the marks, there is little evidence in the record as to this factor. It is therefore neutral.

### g. Defendant's Intent in Selecting the Mark

If an alleged infringer knowingly adopted its mark with the other mark in mind, the Ninth Circuit applies a presumption of deception. *La Quinta Worldwide LLC*, 762 F.3d at 877. The parties both argue that the other party nefariously pursued their trademarks to harm the other. Plaintiffs claim that Defendants knew they were creating an online discount travel business under the name "HAPPITRAVEL" and copied both the business and the name. Defendants, on the other hand, claim that Plaintiffs learned of the term "HAPI" from the parties' previous dealings and used the name to form their business HappiTravel. Because both theories of mark selection are minimally supported, the Court cannot determine if Defendants did indeed choose their mark with Plaintiffs' mark in mind. Therefore, this factor is also neutral at this time.

### h. Likelihood of Expansion of the Product Lines

"When there is 'a strong possibility that either party may expand his business to compete with the other,' this factor weighs in favor of finding 'that the present use is infringing.'" *Id.* at 877–78 (quoting *Sleekcraft*, 599 F.2d at 354). Here, both parties are clear that their trademarks represent fledgling enterprises

that they hope will grow.  It is also clear that they will inevitably compete.
Therefore, this factor weighs in Plaintiffs' favor.

### 3. Conclusion

The weight of the factors substantially supports the conclusion that a
likelihood of confusion exists between Plaintiffs' "HAPPITRAVEL" mark and
Defendants' "HAPI TRAVEL" mark, although Plaintiffs have not demonstrated
consumer confusion regarding their "BE HAPPY. TRAVEL." mark.  Accordingly,
Plaintiffs have established a likelihood of success on the merits.

### B. Irreparable Harm

Where, as here, a plaintiff demonstrates a likelihood of success on the
merits, the plaintiff is entitled to a rebuttable presumption of irreparable harm.  *AK
Futures LLC v. Boyd Street Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022) (citing
15 U.S.C. § 1116(a)).  Defendants present two main arguments as to why Plaintiffs
are not harmed and therefore they overcome the presumption: (1) Plaintiffs do not
demonstrate they are likely to experience irreparable harm and (2) in delaying the
filing of this motion, Plaintiffs have shown that this lawsuit is more about animus
towards Defendants than about real harm they will likely incur from the trademark
infringement.  Neither is sufficient to rebut the presumption of irreparable harm.
*See id.* at 695.

First, contrary to Defendants' understanding, because Plaintiffs are entitled to a presumption, they need not make a threshold showing of harm. *See AK Futures LLC*, 35 F.4th at 694. Even so, Plaintiffs have shown that Defendants' use of "HAPI TRAVEL" and www.hapitravel.com has drastically and negatively impacted their revenue. Defendants cannot overcome Plaintiffs' presumption by merely arguing that Plaintiff did not experience enough harm.

Second, it is unclear given the record at this time whether Plaintiffs delayed this litigation to harm Defendants. If Defendants are correct that Plaintiffs waited until October to move for a preliminary injunction to "allow Defendants to continue to invest in their business and the [brand launch] convention to exacerbate any prejudice and impact to Defendants," (Doc. 26 at 7–8), this weighs heavily against Plaintiffs' irreparable harm argument and may overcome their rebuttable presumption. However, if Plaintiffs are correct that they only waited to file this motion because they actually did not know that Defendants were using an allegedly similar mark, it negates Defendants' proposition. At the hearing, Defendants attempted to show that Plaintiffs registered their trademark just one week after Defendants announced the launch of Hapi Travel Destinations. However, Plaintiffs have demonstrated that they began using HappiTravel as early as 2019. Because the burden is on Defendants to overcome Plaintiffs' rebuttable presumption, and they have done so, Plaintiffs have shown irreparable harm.

## C. Balance of Equities

"Before issuing a preliminary injunction, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (internal quotation marks omitted). Plaintiffs have shown that they have invested significant time and money in planning and creating the HappiTravel business. Failing to enjoin Defendants' use the "HAPI" mark would likely continue to have a serious impact on their ability to market and sell their services. At the same time, Defendants have invested in their travel business and an injunction would also likely have a serious impact on them. However, as the infringing party, Defendants "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Cadence Design Sys. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (internal quotation marks omitted). So, while Defendants' purported harms are subject to some weight, they do not outweigh Plaintiffs' harms. Therefore, the equities balance in Plaintiffs' favor.

## D. Public Interest

The public interest is generally considered neutral in cases involving two private parties. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138–39 (9th Cir. 2009). Accordingly, neither party compellingly argues the public's interest here.

Plaintiffs' only argument that it is in the public's interest to enjoin Defendants because its interest is per se served by upholding *copyright* protections. *See Disney Enters., Inc.*, 869 F.3d at 867. However, they bring no argument why a *trademark* protection serves the public interest. Defendants focus only on the balance of equities, not the public's interest. Because neither party provides any reason to consider this factor, this factor is neutral.

## II.    Scope of the Injunction

"Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017). Accordingly, a preliminary injunction should be crafted to "meet the exigencies of the particular case." *Id.* (quotation marks omitted). As discussed above, Plaintiffs have made a preliminary case for trademark infringement as it relates to the "HAPPITRAVEL" mark. They have made no such showing in regard to their other mark, "BE HAPPY. TRAVEL." Moreover, Plaintiffs have not provided a sufficient basis for this Court to enjoin Defendants' use of the more generalized terms of "HAPPY TRAVEL" or "HAPY TRAVEL." As a result, the relief provided below is tailored to prevent Defendants' use of the terms "HAPPI" or "HAPI" within the online travel industry.

19

## III.   Preliminary Injunction Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  A preliminary injunction will limit Defendants' use of the Hapi Travel Destinations mark.  That business is currently taking in revenue of around $100,000 per month.  Plaintiffs indicated they could pay a bond of $100,000, which is a reasonable sum to " pay the costs and damages sustained" by Defendants if they are "found to have been wrongfully enjoined or restrained." *Id.*

CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiffs' motion for a preliminary injunction, (Doc. 10), is GRANTED in PART and DENIED in PART as follows:

Defendants, including their officers, employees, agents, and affiliates, are prohibited, restrained, and enjoined from the following:

(1)    Using any mark, brand, or designation with the term "HAPI" or any permutation of "HAPI," whether alone or in combination with other words, names, images, characters, or symbols in connection with the sale, offer for sale, promotion, or advertising of any travel-related sales or services, including travel

20

referral programs, travel agency services, travel booking, travel discounts, or member of club travel services.  This prohibition expressly extends to the "HAPI TRAVEL DESTINATIONS" mark and the word "HAPI" used in conjunction with travel or related generic identifies (Hapi Travel, Hapi Trips, Hapi Places, Hapi Clubs, etc.);

(2)     Imitating, copying, making unauthorized use of, or otherwise infringing, Plaintiffs' "HAPPI" umbrella mark;

(3)     Offering mobile apps or operating websites using URLs or domain names which incorporate "HAPI" with travel or related generic identifiers (e.g., trips, cruises, hotels, condos, places);

(4)     Operating or administering any and all social media or video sharing accounts related to or using travel-related HAPI references; and

(5)     Using any tags, nicknames, handles, hashtags, profile names, social media identifiers, or similar online or searching designations with travel-related "HAPI" references or using any such terms of SellerIDs that are visible to a computer user or serves to direct computer searches to Internet-based e-commerce sites registered, owned, or operated by Defendants.

IT IS FURTHER ORDERED that Plaintiffs must deposit a bond of $100,000 with the Clerk of Court within five (5) business days of the date of this

Order.  Details for the payment of the bond may be discussed with the Clerk of

Court.

IT IS FURTHER ORDERED that Defendants Motion for Leave to File a

Motion for Reconsideration is DENIED.  (Doc. 48.)

DATED this 8th day of December, 2022.

_____
Donald W. Molloy, District Judge
United States District Court